## FINESS BROCK v. THE STATE.

### No. 2605. Decided December 11, 1902.

**1.—Rape—New Trial—Newly Discovered Testimony.**

On a trial for rape upon a female under the age of 15 years, where the issue was as to the age of the prosecutrix, a new trial should have been granted for newly discovered testimony which would be most material as tending to raise a reasonable doubt in the minds of the jury as to the age of the prosecutrix.

**2.—Same—Wife as Witness Against Her Husband.**

On a trial for rape defendant's wife was introduced by the State, without objection as to her competency, as a witness against him; and she not only testified to various violations of the law by her husband, but also to confidential communications and matters of that character. Held, that both at common law and under our statute, the wife in this case was incompetent to testify against the husband, and her incompetency could not be waived nor could the husband consent that she might so testify, as it

would be against law and public policy, and is a matter which does not rest in the discretion of the parties.

**3.—Same.**

Under our statute, the wife is an incompetent witness against her husband, and her evidence can not be used even by consent of the husband; and she can only be used as such witness when placed upon the stand by her husband, except where the offense charged against him is a crime against her personally.

Appeal from the District Court of Tom Green. Tried below before Hon. J. W. Timmins.

Appeal from a conviction of rape of a female under the age of 15 years; penalty, death.

The indictment charged appellant, in two counts, with a rape upon Hattie Meads, on the 28th day of May, 1902. The first count charged a rape upon a female under the age of 15 years; the second, a rape committed by force, threats and fraud. Both counts were submitted to the jury, and the verdict of guilty was a general verdict. Hattie Meads, the prosecutrix, was defendant's stepdaughter. The State called defendant's wife as a witness, and, without objection on his part, she testified against him.

It is unnecessary to give a statement of the case generally.

*C. E. Duboise* and *Allen & Upton*, for appellant. *Jas. O. Wiley*, also for appellant.—Did the court err in permitting the wife of defendant to testify in this cause to any facts against this defendant in the absence of any objection on his part upon the ground that she was his wife? That it would be reversible error had such objection been made in the lower court and such testimony admitted would be undeniable. Then, is such testimony of such a character as to cause the court to consider its admission in the absence of an objection and for the first time raised in this court? That is to say, is the error fundamental. If it is not, then no testimony ever was or can be of such a material character or the witness be under such legal disabilities as this court can consider such testimony as fundamental and therefore without exception. In the first place, it disclosed, if true, the defendant to be a man wholly devoid of shame, a brute of the most degraded character; that he had committed upon her person the most degraded assaults, threats and indignities, and had intercourse in her very presence with her own daughter, and by so doing outraged her wifely dignity and womanly pride, and a recitation of such facts in the presence of the jury and the nature of same inflamed their minds so that it was impossible for them to carefully weigh and consider the testimony offered, and without properly considering other testimony. They promptly returned into court their verdict assessing the highest penalty known to the law, and that, too, upon facts showing at most illicit intercourse with the consent of the alleged injured female.

I shall not argue the question as to whether or not you will reverse this cause, if you find that you can consider the above objection first raised in this court. That you will do so I am convinced, first, be-

cause in the case of Messer v. State, 63 S. W. Rep., 643, where the tes-
timony was not near so damaging as it is in this case, this court con-
sidered same on objection first raised in this court. In that case the
wife was placed upon the stand by her husband and gave evidence in
his favor, and the State on cross-examination attempted to draw testi-
mony from her not testified to by her in her examination in chief, and
for the sole purpose of contradiction, so as to discredit her said testi-
mony, and the testimony so elicited was not directly against her husband,
and this court reversed the cause. In Washington v. State, 17 Texas
Crim. App., 203, the same rule was announced. Second, because the
rule of evidence which prohibits one of the spouses from testifying
against the other says that such spouse can not testify against the other
with the consent of the other spouse. This rule will be found in Greenl.
on Ev., sec. 340; also Wharton's Crim. Ev., 8 ed., sec. 391; Archbold's
Prac. and Plead., p. 474; Jones' Law of Ev., sec. 757. Each of the above
authorities cite among many other cases Randall's case, before Van
Ness, Judge, City Hall Rep., 141, 153, 154, and Stein v. Bowman, 13
Pet., 209. Now, if such is the rule, it follows as a matter of course the
court must enforce it whenever their attention is called to its infrac-
tion. Otherwise the rule would be no rule, if it were left to the inter-
ested parties who look to its enforcement. For if the defendant can't
consent, and he does consent by refusing to object, then it is plainly
the duty of the court trying the cause to prevent its infraction, of his
own motion refusing to hear the offered testimony, and if he fails, then
of course this court or the court to which he may appeal must see that
such rule is obeyed by reversing the cause and instructing the trial court
on another trial to exclude the prohibited testimony.

　The question may be asked, should the judge see the rule enforced
without the request from the injured party? I will answer by saying,
first, that article 775 reads as follows: "The husband and wife may
in all criminal actions be witnesses for each other, but they shall in
no case testify against each other, except in criminal prosecutions for
an offense committed by one against the other." It is therefore im-
perative and absolute in its terms, and means and says that the wife shall
not testify against her husband with or without his consent, with or
without objection or exception, and therefore it follows that such con-
sent, objection or exception are useless. Second, because the rule was
not established for the protection of the spouses alone, but upon the
ground of public policy, and therefore the general public, to wit, the
State, have an interest in seeing this rule kept intact, and the defendant
nor any other can consent that its rights shall be overruled and dis-
regarded. Justice McLean, of the Supreme Court of the United States,
in the case of Stein v. Bowman (in a civil action), reported in 13 Pet.
U. S. Sup. Rep., page 222, uses the following language: "Can the
wife either voluntarily be permitted or by force of authority be com-
pelled to state facts in evidence which renders infamous the character

of her husband? We think most clearly this can not be. Public policy and established principles forbid it. The rule is founded upon the deepest principles of our nature,—principles that have grown out of the domestic relation that constitutes civil society and which are most essential to the enjoyment of that confidence which should subsist between those who are connected by the nearest and dearest relations of life. To break down and impair these great principles which protect the sanctity of the husband and wife would be to destroy the best solace of human existence." Now, it would impair this great principle to even permit the State's attorney to call the wife of the defendant before the jury for the purpose of questioning her against her husband, and thereby force him to object to her testimony. Suppose a defendant was on trial for an offense and all the circumstances were strongly against him, and it was a case resting upon circumstantial evidence alone, and his defense was an alibi. His proof showing him to be at home and away from the place of the alleged offense, and his wife, not having her attention called to the circumstances at the time, failed to remember whether or not defendant was at home as alleged by him and could therefore do him no good by her testimony, but her failure to so remember would do him an irreparable injury if testified to by her, and he could not therefore place her upon the stand. Now, suppose the State's attorney should call this wife and ask her the question whether or not defendant was at home at this particular time, and the defendant should object, not that her testimony was not probably true, not that she was prejudiced against him, not that the facts were clear in her mind, but solely upon the technical ground that she was his wife. The court would refuse to hear her testimony as a matter of course, but what would the jury believe? Had he not better let her testify? The conclusion of the jury would be that her testimony was against him and it was for that reason that he objected to the testimony. Therefore, I say again, this rule would be impaired even if he had objected and been sustained. And again, suppose a defendant was on trial for the theft of a diamond ring, and the circumstances pointed to his guilt; and further, suppose in a moment of excessive fondness this guilty husband had informed his wife that he had for her sake stolen the ring and presented it to her. Now, suppose that the defense was that he had purchased the ring from an unknown person, as it is often claimed, and then the State's attorney should call the wife and ask her how the defendant explained his possession to her, and he objected. The court would of course exclude the testimony. Would not the jury, being composed of reasonable men, know that the testimony would have been against him, otherwise there would have been no objection made, and thus the trust and confidence the defendant had in his wife would have been used against him. And the fact that the defendant is guilty is no argument in favor of the abrogation of this rule, for the conviction of no man, no matter how guilty, is a sufficient reason why a rule so long acquiesced in and of so great importance should be for the moment

infringed.   This rule, which protects the home relation from exposure
on the witness stand by either or both of the spouses, rests upon a
reason intimately connected with the home, the happiness, and the
children of these spouses, as well as themselves, and it is here submitted
that this principle does not only afford protection to the husband and
wife, but to their children and the society in which they live, and there-
fore they are not at liberty to invoke it or not at their discretion,
when a question is propounded, but renders them incompetent to dis-
close facts in evidence in violation of this rule.   It follows that if it
is not within the discretion of the parties, then the duty devolves upon
the court to see that the rule is kept inviolate.   If they do not it will
afford but little protection to the husband or wife either upon trial or
on the witness stand, on account of want of information as to their
rights, and on a rigid cross-examination.   The case of Dill v. State, 1
Texas Crim. App., 278, holds that the rule hereinbefore announced has
not been abrogated by the statutes of Texas.   See Thompson v. State,
14 Texas Crim. App., 70 ; Compton v. State, 13 Texas Crim. App., 271 ;
John v. State, 21 Texas Crim. App., 19 ; Gains v. State, 42 S. W. Rep.,
386 ; Welch v. State, 46 S. W. Rep., 812 ; Blume v. State, 21 S. W.
Rep., 1027.

In the case of Bassett v. United States, 137 U. S., 762, Justice
Brewer, delivering the opinion for the court, cites with approval the
case of Stein v. Bowman, 13 Pet., 209, and then reannounces the doc-
trine.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment is for rape, the
first count charging rape upon Hattie Meads, a girl under 15 years
of age, and the second count rape upon the same girl by force, threats
and fraud.   Both counts were submitted to the jury, and a verdict of
guilty was returned, assessing the death penalty.

The offense occurred May 28, 1902.   The absent witness, Elliott, was
expected to testify that he knew the age of the prosecutrix; that the
date of her birth was the 25th of April, 1887; the alleged rape having
occurred the latter part of May, 1902.   That he was living in San An-
gelo, where Meads and his wife were married, during the years 1886
and 1887, and neighbor to the mother of the prosecutrix, when prose-
cutrix was born; that the mother's maiden name was Corintha Bell
Stewart; that she married Gid Meads, father of prosecutrix, on June
14, 1886; that during the years 1886 and 1887 Gid Meads and his wife
were neighbors to witness and his family; that their families visited and
witness knows all the above facts to be true.   This application for con-
tinuance was refused.

Attached to the motion for new trial is the affidavit of Mrs. A. J.
Potter and her son Sid.   Sid Potter states in his affidavit that his age
is 26 years in September of this year; that he knew all the parties to

this transaction, and knows the mother of prosecutrix gave birth to a girl child, after her marriage, prior to May, 1887; in other words, fixes the date of the birth of the child more than a month prior to the 28th of May, 1887. Mrs. A. J. Potter states in her affidavit that she now lives and has resided in the town of San Angelo for twenty years continuously, and was living in the town during the years 1886 and 1887; that she was well acquainted with Corintha Bell Brock, mother of prosecutrix; that her maiden name was Stewart; that she was well acquainted with her former husband, Gid Meads, father of prosecutrix, and remembers the circumstances of the marriage of Mrs. Brock with Gid Meads; that they were married in 1886, by the Rev. A. J. Potter, affiant's husband. That immediately after the marriage Mr. and Mrs. Meads moved on to the "same block" in which affiant then lived, at the rear of affiant's lot, and lived there the remainder of the year 1886 and the year 1887, during which time affiant was a constant visitor of the Meads family. That some time during the spring of 1887 Mrs. Meads gave birth to a female child; that this particular child was born in about ten or eleven months after the marriage of the mother to said Gid Meads; that affiant was at the residence of Mrs. Meads shortly after the birth of the child, and knows it was a female child, and, if called upon, would testify to the above facts. This is alleged to be newly discovered testimony, and is brought strictly within the rules authorizing a new trial upon such testimony. If the testimony of Elliott or the testimony of Mrs. Potter and her son is true, or would raise a reasonable doubt as to the age of the girl in the minds of the jury, then it was most material. A new trial should have been awarded upon both grounds. The wife of appellant was used as a witness by the State and gave evidence of a most damaging character against him. She was required to hold up before the jury the family quarrels, the family disturbances, alleged assaults upon her by appellant, as evidence against him. This testimony showed him to be of a cruel disposition. In fact, it shows a life of turmoil and trouble and assaults and threats by the husband against the wife and the prosecutrix, continuing for some time prior to the alleged rape. The only exception taken to her testimony was that discussed in a former portion of this opinion. The question of her competency was not raised in the trial court, but for the first time is questioned on appeal. The proposition being that, under our statute, the wife is not a competent witness against the husband in a criminal proceeding of this character with or without his consent; that neither spouse can consent to the other testifying against him in a criminal case, except where it is an offense of one against the other. So far as we are aware, for the first time this question has been presented to this court for adjudication. In Daffin v. State, 11 Texas Crim. App., 76, while not discussed, it was held that objection to an illegal cross-examination of the wife came too late after trial. In Dill v. State, 1 Texas Crim. App., 278, there is an intimation that the wife would not be permitted to testify against appellant

under any circumstances, unless it was an offense by her husband against her. In this particular case, she not only testified to various violations of law not involved in the rape case, as well as the alleged rape, but also confidential communications and matters of that character. Article 774, Code Criminal Procedure, provides that "Neither husband nor wife shall in any case testify as to communications made by one to the other while married; nor shall they, after the marriage relation ceases, be made witnesses as to any such communication made while the marriage relation subsists, except in a case where one or the other is prosecuted for an offense, and the declaration or communication made by the wife to the husband or by the husband to the wife goes to extenuate or justify the offense for which either is on trial." Article 775, Code Criminal Procedure, further provides, "The husband and wife may in all criminal actions be witnesses for each other, but they shall in no case testify against each other except in a criminal prosecution for an offense committed by one against the other." The question as to whether or not this is a question of privilege subject to waiver by the parties, or can be waived by consent of the parties has been a matter of some discussion in the courts. In New York it was held that it could be waived; but that statute is totally unlike the Texas statute, and its language is peculiar. It provides the husband or wife of the person indicted or accused of a crime is in all cases a competent witness on the examination or trial of such person, but neither husband nor wife can be compelled to disclose a confidential communication made by the one to the other during their marital relation. New York Penal Code, sec. 715. That was the article the New York court construed in the cited cases. It would seem that in England the rule is not satisfactorily settled, but, as we understand the weight of the authorities there, the husband or wife can not consent to the other testifying against him; and various reasons are assigned why this is true. Practically the authorities there, as well as in the United States, have agreed that the best reason for the rule is based on public policy. Courts have been driven or have resorted to reasoning why statutory rules are prescribed. What actuated the legislative body in creating certain enactments may be satisfactory to a court to understand; but whatever the reason for rules of this character may be, if the wording is plain, it is totally unnecessary to seek out reasons. It is sufficient for the court, where the language is plain, to adhere to the language employed. Usually a party upon trial may waive such matters as are usually termed rights; but it may be stated accurately that such matters as he may waive are those that are usually known as privileged, as the relation, for instance, between attorney and client. If his rights alone were the issue, it might be perhaps held that they could be waived; but where the policy of the law enters into it and goes beyond this, or where the statute places it beyond the question of privilege of the accused, and makes the inhibition a matter of public policy, it is to be seriously questioned that the court would be justified in holding such

matters could be waived. In this particular character of case, the spouse upon the stand has a right to be protected under the statute from being required to answer. The other spouse being upon trial has a right to be protected, and society has an overshadowing right that family matters should not be dragged into the courts of the country to the subversion of the family relation, which is the paramount substratum and basic principle of society. In Stone v. Bowman, 13 Peters, 209, the Supreme Court, speaking through Justice McLean, said: "The rule which protects an attorney in such a case is founded on public policy, and may be essential in the administration of justice. But this privilege is the privilege of the client, and not of the attorney. The rule which protects the domestic relations from exposure rests upon considerations connected with the peace of families. And it is conceived that this principle does not merely afford protection to the husband and wife, which they are at liberty to invoke or not, at their discretion, when the question is propounded; but it renders them incompetent to disclose facts in evidence in violation of the rule. And it is well that the principle does not rest on the discretion of the parties. If it did, in most instances it would afford no substantial protection to persons uninstructed in their rights, and thrown off their guard and embarrassed by searching interrogatories. In the present case the witness was called to discredit her husband; to prove, in fact, that he had committed perjury; and the establishment of the fact depended on his own confessions. Confessions which, if ever made, were made under all the confidence that subsists between husband and wife. It is true the husband was dead, but this does not weaken the principle. Indeed, it would seem rather to increase than lessen the force of the rule. Can the wife, under such circumstances, either voluntarily be permitted, or by force of authority be compelled, to state facts in evidence which render infamous the character of her husband? We think, most clearly, that she can not be. Public policy and established principles forbid it. This rule is founded upon the deepest and soundest principles of our nature,—principles which have grown out of those domestic relations that constitute the basis of civil society, and which are essential to the enjoyment of that confidence which should subsist between those who are connected by the nearest and dearest relations of life. To break down or impair the great principles which protect the sanctities of husband and wife, would be to destroy the best solace of human existence." In a late case by the same august tribunal, the case of Stone v. Bowman was cited with approval. See Bassett v. United States, 137 U. S., 762. This opinion was delivered by Justice Brewer, and the question was whether or not one of the polygamous wives could be heard to testify against her husband. The Supreme Court held her incompetent. This language is found in the opinion: "Is polygamy such a crime against the wife? That it is no wrong upon her person is conceded; and the common law exception to the silence upon the lips of husband and wife was only broken, as we have

noticed, in cases of assault of one upon the other. That it is humilia-
tion and outrage to her is evident. If that is the test, what limit is
imposed? Is the wife not humiliated, is not her respect and love for
her husband outraged and betrayed, when he forgets his integrity as a
man and violates any human or divine enactment? Is she less sen-
sitive, is she less humiliated, when he commits murder, or robbery, or
forgery, than when he commits polygamy or adultery? A true wife
feels keenly any wrong of her husband, and her loyalty and reverence
are wounded and humiliated by such conduct. But the question pre-
sented by this statute is not how much she feels or suffers, but whether
the crime is one against her. Polygamy and adultery may be crimes
which involves disloyalty to the marital relation, but they are rather
crimes against such relation than against the wife; and, as the statute
speaks of crimes against her, it is simply an affirmation of the old
familiar and just common law rule. We conclude, therefore, that under
this statute the wife was an incompetent witness as against her hus-
band."

It has been held in this State that the statute has not changed the
common law rule. If that be true, then the two cited decisions ren-
dered by the Supreme Court of the United States are in point. It
occurs to us that the common law rule is rather broadened and em-
phasized than weakened by our statute. This line of reasoning finds
support in many of the text writers. See 3 Rice on Ev., p. 282. There
this language is found: "And it is well that the principle does not
rest on the discretion of the parties. If it did, in most instances it
would afford no substantial protection to persons uninstructed in their
rights and thrown off their guard and embarrassed by searching inter-
rogatories." See the Law of Evidence, by Burr W. Jones, vol. 3, sec.
757, and authorities cited in note 6; 1 Greenl. on Ev., sec. 340; Davis
v. Dinwoodie, 4 Texas, 678; 1 Ves., Jr., 49. The only English author-
ity which has been called to our attention laying down a contrary doc-
trine is Pedley v. Willesley, 3 Car. & Payne, 588. That case does not
enter into a discussion of the question, or state any reason for the hold-
ing; nor does it state whether it is under the common law, or the act
of Parliament, which seems to have abridged the common law in regard
to this rule. Without further discussion of the question, we are of opinion
that it was error, though no exception was reserved, to use the wife as
a witness against appellant. In other words, under the statute she is
an incompetent witness, whose evidence can not be used even by the con-
sent of the husband, and she can only be used when placed on the stand
by her husband, except where the offense is against her personally.
Offenses against the daughter are not offenses against the wife.

For the errors discussed, the judgment is reversed and the cause re-
manded.

*Reversed and remanded.*