**SMITH v. STATE.**

No. 21551.

Court of Criminal Appeals of Texas.

April 30, 1941.

R. H. Dent, of Hemphill, and Synnott & Smith, of Jasper, for appellant.

Lloyd W. Davidson, State's Atty., of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was charged by indictment with the murder of George Meshell by shooting him with a gun. The offense is alleged to have been committed on the 18th day of August, 1940, in Sabine County, Texas. Upon finding him guilty the jury assessed his punishment at death.

■ The evidence is amply sufficient to warrant the verdict of the jury, including its infliction of the death penalty. It is disclosed that the appellant is a negro and the victim was a white man and they lived neighbors; that bad blood had arisen between them, and appellant had conceived the idea that the deceased had poisoned his seven head of cattle, all of which had died, and that from and after the death of the last of them on July 20 preceding the date of the murder he constantly labored under this conviction and deliberately planned the murder. On Sunday morning, according to his confession which is properly admitted in evidence, he met the deceased in his own field and shot him, killing him almost instantly, and then dragged his body some seventy yards to a well beyond a barbwire fence and threw him into it. When the deceased failed to return to his home that night a searching party was organized at daybreak and soon the body was discovered and recovered. The appellant went about his business and was engaged to some extent in efforts to hide his identity as the perpetrator of the crime. He was arrested on Tuesday afternoon and placed in jail. His wife left the country and was arrested in Louisiana where she was placed in jail and subjected, according to her testimony which is undenied, to rather searching examination, resulting in her telling the officers the story of the things that had taken place, revealing to them the guilt of appellant. The Texas officers present at the time returned to Sabine County and resumed their questioning of appellant, telling him that he had as well confess to the crime as his wife had already "spilled the beans". It appears that they stated the true facts of the case.

■ When the wife was placed on the witness stand to tell her story she admitted she had told the officers the truth about what had occurred and there is no indication that this was misrepresented to appellant. As a consequence, he told the story himself and signed a statement which set out that it was voluntarily made. This statement was introduced in evidence and there is no testimony which we find in the case that will, to any degree, contradict the statement itself and that of the officers that it was given voluntarily. It is in proper legal language and, we think, was admissible.

Appellant did not testify, but he called his wife whose main purpose seems to be to raise the issue of insanity. He also introduced a number of witnesses who testified as to his good reputation in the community where he had resided for some years and had purchased the farm on which he was living with his wife and several children. It is also shown that he had no past criminal record.

The record contains seven bills of exception, all of which will be overruled as without merit and without comment, with the exception of bill of exception number six. The bill in question, leaving off the formal part, is as follows:

"The defendant, having introduced in evidence, Bertha Smith, his wife, and having asked her the question: 'Had Bennie Smith ever had any trouble since you and him had been married, in any way' to which the witness had answered: 'No, sir'. Which question and answer had been excluded by the court on objection of the State, and then the following question having been asked here: 'Well, during the time you and Bennie had been living together in the county, had you had any trouble of any kind before'; and upon objection by the State, the answer 'No Sir' having been excluded, then the State propounded the following question: 'He had been wanting to kill him since July 20th and he had a gun didn't he'? A. Yes sir, he had one. Q. Was this his gun here? A. That is it. Q. What? A. That is it.

"To which cross-examination and the answers to said questions defendant objected because the witness was the wife of the defendant, and the court after the testimony was given sustained the objection thereto. And notwithstanding this, the District Attorney on such examination proceeded as follows: Q. Now Bennie had told you he was going to kill George Meshell, hadn't he? Just tell the truth. A. Well, I can't go against my husband. Q. What? A. I don't know.

"Whereupon defendant objected, as it was testimony against the witness' husband and the court sustained the objection, but notwithstanding this, the District Attorney proceeded with such examination as follows: and the witness answered as follows: 'And you had told him not to do that? A. Oh, I didn't want him to have any trouble. Q. You told him not to do that? To which question and answers the defendant again objected and the court then and there sustained said objection.

"That notwithstanding this, the District Attorney proceeded with such cross-examination and the following further proceedings were had, to-wit:

"Q. What did Bennie Smith tell you the morning he killed George Meshell. By Mr. Dent: I am still objecting to that. By Mr. Fisher: Your Honor, I don't know what I can question the witness about. He put her on the stand. By the Court: You know the rule with reference to the wife of the defendant. The objection is sustained."

In approving this bill the court attached the following qualifications: "Upon cross-examination, and without objection, this witness, the wife of defendant, testified that defendant told her that he killed deceased, (S. F. page 23, lines 12 to 15); also that defendant killed deceased; (S. F. page 24, lines 16, 17.) There was no objection at any time that any testimony adduced by the state from this witness was not germane to the examination and testimony of the witness upon her direct examination of the defendant."

This being a death penalty case this court will, as always look to the statement of facts in appraising the effect of the things which are pointed out by the bill. The court's qualification is not pertinent to the issue raised by the bill. The statement of facts referred to in the qualification, as indicated, discloses that the evidence which the state's attorney was attempting to elucidate was not evidence brought out by the wife in defense of her husband, but evidence which had been given against him at the instance of the state without objection. Hence, the rule which the learned trial court evidently had in mind will not apply. The objection raised in each instance by appellant points out no reason and, therefore, does not limit the scope of the objection, but leaves it open to any legal objection which may be made to it. Generally such objections may not be valid, but where the evidence is included in that inhibited by statute (Vernon's Ann.Code of Criminal Procedure, Art. 714) it is not necessary to point out in the objection the reasons therefor. The statute makes it perfectly apparent.

It is observed from the portion of the bill copied that appellant's counsel had asked the wife a question touching the past record of her husband which the court did not feel was admissible and, upon the state's objection, excluded it. The state's attorney then proceeded to cross-examine the witness on the very evidence which he had caused to be excluded, as it appears to us. The questions he asked the wife elicited from her answers which we find in the bill and in the statement of facts as going before the jury. It gave evidence which she was incompetent to give contrary to the interest of her spouse. The learned trial judge so understood and properly sustained objections to the evidence in each case. However, disregarding the rulings of the court, the district attorney proceeded to ask additional questions of a like nature and to bring forth additional statements from the wife which were likewise objected to and the objection sustained by the court. Nevertheless, as revealed by the bill herein quoted, these harmful facts were placed before the jury by a method which the court did not approve and in the face of the fact that the court reminded counsel that he knew "the rule with reference to the wife of the defendant". The illegal testimony was before the jury and the effect which it had on the jury in reaching a death penalty cannot be measured and is not a subject of speculation.

The cross-examination of husband or wife testifying in behalf of the spouse must be confined to matters about which the witness has testified in behalf of the spouse. No privileged communications or threats made by the one may be testified to by the other. 44 Tex.Jur. page 1035 and 1051. To admit such testimony is not only a violation of a right of the party on trial, but it is a hazard to that confidential sacred relationship which is the basic foundation for the home as a unit and plan of the American civilization and is founded upon deepest and soundest principles of our nature, principles which

have grown out of those relations that constitute the basis of civil society and which are essential to the enjoyment of that confidence which must exist between those who are connected by the nearest and dearest relations of life.

The parties involved are obscure negroes. Their imprint on the social order may be nil, but the rights involved constitute "The American way of Life" and the law we interpret knows no class or cult. She invoked nature's law in her answer, "Well, I can't go against my husband". It is the law of our state. The evil lies in the results obtained for the answers she did give were against her husband.

The state called the witness to testify on these subjects independent of any questions about which she had been permitted to testify in behalf of her husband and the only basis which we can discover is that pointed out by the court in his qualifications which are, when understood, the evidence elicited by the state against her husband without objection from him, but not given by her for him.

The trend of decisions has been away from the principles announced in Brock v. State, 44 Tex.Cr.R. 335, 71 S.W. 20, 60 L.R.A. 465, 100 Am.St.Rep. 859, opinion by Judge Davidson, but they have usually been based on the ground that the spouse had first been called by the accused and had given testimony which was utilized as a basis for the cross-examination. Nowhere do we find any decisions in our court which would sustain the state's conduct in placing this evidence before the jury. Certainly it is not harmless.

It is regrettable that this case must be reversed on the grounds stated, as it is observed that the learned trial judge has so cautiously and impartially conducted the trial, but this court cannot depart from the well established rule based on good reason and a long line of decisions, even in this extreme case. The very able prosecutor, always with good intentions to be fair, as is evident in his record before this court and in his conduct of this case, and capable, as observed by the trial court, has nevertheless presented the record with an error which cannot be overlooked.

The judgment of the trial court is reversed and the cause remanded for a new trial.