## WALTER WHITE v. THE STATE.

### No. 2141. Decided March 20, 1901.

**1. Murder—Evidence—Statements and Declarations of Defendant.**

On a trial for murder, where the State had proved as original evidence that on the day of the homicide, and immediately thereafter, the defendant told certain parties he had killed deceased with his second shot, Held, this did not authorize defendant to prove that on the next day after the homicide he had told certain other parties that he had killed deceased with the first shot he fired, the conversations proposed to be brought out by defendant being no part of the conversations adduced by the State.

### 2. Impeached Witness—Supporting Testimony.

A witness who has been impeached by showing his statements contradictory to his testimony at the trial can be supported by proof that he made the same statement as testified to soon after the transaction, no improper motive on the part of, or influence over, the witness, in the interim, being shown; and the fact that a day intervened between the contradictory statement proven by the State and the supporting statement proposed to·be proved by defendant, would not affect the admissibility of the supporting testimony.

### 3. Murder—Charge on Self-Defense and Provoking Difficulty.

· On a trial for murder it is reversible error for the court to limit and restrict defendant's right of self-defense by a charge upon provoking the difficulty when there is no testimony raising the issue of provoking the difficulty.

### 4. Same—Provoking Difficulty—Charge.

In every case in which the facts authorize a charge upon provoking the difficulty, the judge should be able, from the evidence, to indicate the provocation and to define to the jury its effect and bearing upon the case and to what extent it limited or abridged defendant's right of self-defense; but, in doing this, it is not necessary for the court, in the charge, to group the facts constituting the provocation.

APPEAL from the District Court of Rusk. Tried below before Hon. · W. J. GRAHAM.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of Mark Wyatt, on the 6th day of January, 1901.

Appellant, White, kept a drinking saloon in the village of Tatum. Deceased, Wyatt, was one of his customers and had run up an account at his bar. Wyatt was a turbulent, quarrelsome, overbearing and dangerous man when under the influence of liquor. The parties had had a difficulty some time before the killing, in which Wyatt had drawn and attempted to shoot White with his pistol. This difficulty, however, had been settled, and, after shaking hands, the parties were apparently friendly up to the occurrences which led to the shooting. The shooting occurred in the barroom at about 1 p. m., on Sunday. Wyatt had been drinking at·the bar the evening and night before and would not allow the bartender to close the saloon until 1 or 2 o'clock that night. Deceased was at the saloon again on Sunday morning and remained about the premises until he was killed. He would not allow the barroom to be closed that morning. White, the appellant, having heard of his conduct, tried to get mutual friends to go and get him away from the saloon. They failed to do so. While White was waiting for some one to get deceased away, a man drove up in a wagon and handed him a shotgun which some one wished to have delivered to the owner, from whom it had been borrowed. After taking the gun, White testified that he loaded it with shells he had in his pocket; the shells being loaded with squirrel shot. He went into the saloon with the gun, passed Wyatt, who was standing in front of the counter, and said, "Boys, here is a gun Shivers left with me for John Fort; it is Sunday, and the doors ought to be closed." Wyatt turned from the counter, saying: "There's

the son of a bitch," and, according to some of defendant's witnesses, drew his pistol, when White fired with his gun, shooting the top of his head off.

*W. C. Buford,* for appellant. [No brief found with the record.]

*N. B. Morris* and *Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at ten years confinement in the penitentiary.

Appellant's first bill of exceptions complains of the action of the court refusing to allow him to prove, by certain witnesses, that appellant told them on the next day after the killing of deceased, Wyatt, while they were examining the gun with which the shooting was done, that he killed deceased with the first shot he fired. Apellant claims that this testimony was admissible to support and corroborate defendant, inasmuch as it had been shown by the State, that on the same day of the homicide and immediately thereafter, he told certain parties that he killed deceased with the second shot. The testimony introduced by the State was admissible as original testimony against defendant, and not as impeaching evidence; and the conversations proposed to be brought out by the defendant were no part of the conversations adduced by the State.

Appellant also proposed to prove by certain witnesses that Henry Rich told him that the first shot killed deceased, Wyatt, and the second shot missed him going through the door. Defendant offered this testimony for the purpose of corroborating Henry Rich, who had been attacked by the State by testimony showing he had told them on the day of the homicide, and immediately thereafter, that appellant killed Wyatt with the second shot. The court explains this bill by showing, after the witness Rich testified that the first shot killed deceased, the State placed witnesses on the stand, and showed that on the same day, directly after the killing, said Rich stated to said witnesses, or in their presence, that the first shot missed deceased, and appellant killed him with the second shot, and that the evidence sought to be adduced was subsequent to this transaction, being made on the next day. The authorities on this subject authorize a witness who has been impeached by showing that he has made statements contradictory to his testimony given on the stand to be supported by proof that he made the same statement soon after the transaction, or, if it is shown that the testimony of the witnesses was recently fabricated, or that he was induced to so testify from some motive or improper influence, then he could be supported by proof that he made the same statement before the influence was brought to bear. See· Dicker v. State (Texas Crim. App.), 32 S. W. Rep., 541; Campbell v. State, 35 Texas Crim. Rep., 160; Jones v. State, 38 Texas Crim. Rep., 87; Rios v. State, 36 Texas

Crim. Rep., 182; Whart., Crim. Ev., 492.   The court in this instance, appears to have drawn the line on all statements made by the witness subsequent to those proven by the State.   Now, if the evidence showed that in the interim there was some motive to fabricate or to change the testimony, then the subsequent statement, though made shortly after the commission of the offense, might not be admissible in testimony; but the mere fact that a day intervened between the contradictory statement proven by the State, and the supporting statement proposed to be proved by defendant, does not occur to us to make any difference.   We think the supporting testimony should have been admitted.   Appellant, both by separate bill and in motion for new trial, excepted to the action of the court in charging the jury on provoking a difficulty; that is, in limiting appellant's right of self-defense with a charge on provoking the difficulty by him.   An examination of the charge of the court on self-defense discloses that, in connection therewith, the court instructed the jury as follows: "On the other hand, if the defendant armed himself with a gun and went where deceased, was, intending to kill him, and, when he got in the presence of deceased, he did any act or said any word reasonably calculated to bring on a difficulty, with the intention of bringing it on, and the intention of killing deceased in the difficulty; and you should believe that, in this way, with such intent, he did bring on the difficulty and kill deceased, then, even though you believe that deceased did draw and attempt to shoot defendant with his pistol, defendant's plea of self-defense could not avail him."   And this charge is again repeated in connection with another charge on self-defense.   So it appears that the entire charge of the court on self-defense is leavened with the charge on provoking the difficulty.   Now, if there was testimony in the record authorizing a charge on provoking the difficulty, a charge of this character might with propriety have been given.   But we have searched the record in vain for evidence raising the issue of provoking the difficulty on the part of appellant.   The evidence for the State discloses no act or word when appellant went into his saloon and found deceased there, calculated to provoke a difficulty.   Lem Barker, one of the eyewitnesses on the part of the State, testified that when defendant came in Wyatt was standing at the bar facing it, his left arm being on the bar and his face in his hand and his right hand up to his breast under his overcoat. He does not show that appellant said or did anything, but merely states that deceased was doing nothing, except standing still, when killed. Appellant's testimony does not suggest that he said or did anything to provoke a difficulty, and cause deceased to attack him.   On the contrary, his evidence indicates that he came into the door of his saloon with a gun in his hands, passed by where deceased was standing in front of the bar, and went into an opening at the west and rear of the counter, and remarked, "Boys, here is a gun Shivers left with me for John Fort.   It is Sunday, and the doors ought to be closed," where-

upon Wyatt (deceased) turned from the counter, saying at the time, "There is the son of a ——," whereupon the shooting began. There is further testimony on the part of appellant showing that deceased drew his pistol, and attempted to shoot appellant, before he fired. Now, this is, in effect, all the testimony as to what was done or said by appellant after he came into the saloon and before the shooting; and it occurs to us that neither any act nor any word spoken by appellant was calculated to or could have been intended to provoke a difficulty. To say the suggestion that the doors of his saloon ought to be closed because it was Sunday was provocative of a difficulty would be a remarkable statement. It was appellant's saloon, and he not only had the right, but it was his duty, to close it; and there is nothing in the surroundings to show that he intended by this expression to cause deceased to attack him in order that he might have an opportunity to slay him. As was said in Cartwright v. State, 14 Texas Criminal Appeals, 502: "In order to provoke a difficulty, the defendant must willingly and knowingly use some language or do acts reasonably calculated to lead to an affray or deadly conflict; and, unless the acts are clearly calculated or intended to have such effect, the right of self-defense is not compromised, even though the party armed himself, and went there for the purpose of a difficulty." The right of self-defense is a sacred privilege of a defendant; and when he is charged with a homicide, and there is testimony tending to show he acted in self-defense, he is entitled to a clear, unequivocal, and unhampered charge on the subject. Unless there is other testimony tending to show that he did some act or used some expression which was calculated to and intended to provoke a difficulty, it is not within the power of the court to limit or curtail his right of self-defense. And, as was said in Morgan's case, 34 Texas Criminal Reports, 222: "In every case in which the facts authorize a charge on provoking the difficulty, the judge should be able to indicate from the evidence the act of provocation, and to define to the jury its effect and bearing upon the case, and to what extent such act limited or abridged the defendant's right of self-defense." Not that it is necessary for the court to group the facts constituting the provocation in the charge, but that in every case, before he is authorized to give such a charge, there must be testimony at least tending to show provocation. McCandless v. State, ante, p. 58. In this case we have given substantially all that was said and done by appellant at the time, and we fail to find in the acts done and the language used by appellant anything to indicate that he intended thereby to provoke deceased to attack him. If the theory of the State be true, then appellant attacked deceased and slew him while he was doing nothing of a hostile character towards appellant. If, on the other hand, appellant's theory be true, deceased, without any cause on his part, first attacked him; and on the evidence he had a right to a charge of self-defense, without any limitation based on the doctrine of provoking the difficulty. The court gave a charge

which cut off his right of self-defense, and was a suggestion to the jury that, in the opinion of the judge, there was evidence which authorized the charge. This was calculated to injure appellant. The judgment is accordingly reversed and the cause remanded.

*Reversed and remanded.*

[NOTE.—The State's motion for rehearing filed by N. B. Morris and Rob't A. John, Assistant Attorney-General, was overruled without a written opinion.—Reporter.]