WALTER EDWARD KRZESINSKI V. STATE

No. 31,610. March 16, 1960

*Robert E. Wilson, Jules H. Cuen,* by *Robert E. Wilson,* El Paso, for appellant.

*William E. Clayton,* District Attorney, *Edwin F. Berliner,* First Assistant District Attorney, *Lawrence M. Welsch, Gus Rallis,* Assistants District Attorney, El Paso, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge

The offense is murder; the punishment, 25 years.

The killing occurred on New Years 1959 at the Tri-State Hotel in El Paso.

The evidence sustains the jury's finding that appellant with malice aforethought killed Lionel L. (Lee) Dubuque by stabbing him with a knife, as charged in the indictment.

Counsel for appellant urges one ground for reversal which is that the state's witness Roxanne Newsome (also referred to as Mrs. Krzesinski) is the common law wife of appellant.

The bill of exception certifies that no objection was made to this witness being permitted to testify, and that the state stipulated that no objection during the trial was necessary if in fact the defendant and the witness who testified for the state against him "were actually married under the common law marriage statute."

The witness Roxanne testified that she married one Newsome in 1948 and had a child by him. Newsome died in the service. She then married one Pidgeon and divorced him in November 1957.

The evidence shows that appellant and the witness Roxanne lived together from January 1958 until May 1958, while both were working for and traveling with a carnival and circus with headquartes in Arizona. She testified: "Q. Did you marry him at that time? A. No, Sir. Q. Have you ever been married to the man? A. No, Sir."

In May 1958 Roxanne got a job in El Paso and on June 20, 1958, married Airman James H. Byron and lived with him until October 1958.

Roxanne started living with appellant again and they registered at the Tri-State Hotel as man and wife.

A charge of adultery was filed against them and she then secured an annulment of her marriage to Byron, appellant making the arrangements and paying the expense.

A day or two later appellant and Roxanne went to a justice of the peace "attempting to get married," but decided they did not want to wait for blood tests. They again registered at the Tri-State Hotel as man and wife.

On December 26, 1958, Roxanne met the deceased whom she had previously known and associated with at the bar where he was employed, and shortly thereafter they registered at the hotel as man and wife, and informed appellant they were going to get married.

Appellant stabbed the deceased with a butcher knife two or three days later, and in about two weeks Roxanne was living with a Mr. Howze and accompanied him to New Mexico as his wife.

At the time of the trial in September 1959 the witness Roxanne testified that she was living with one Simmons as his wife.

Art. 714 C.C.P. provides that "the husband and wife may, in all criminal actions, be witnesses for each other; but they shall in no case testify against each other except in a criminal prosecution for an offense committed by one against the other."

The disqualification, under the statute, of the wife as a state's witness against her husband could not be waived. Bush v. State, 159 Tex. Cr. R. 43, 261 S.W. 2d 158.

It does not follow that evidence raising the issue that a common-law marriage existed will result in reversal, where there is evidence from which the trier of the facts could conclude that the relationship was illicit only.

The proper procedure appears to be to submit such issue to the jury. Bell v. State, 137 Tex. Cr. R. 401, 129 S.W. 2d 664; Welch v. State, 151 Tex. Cr. R. 356, 207 S.W. 2d 627.

As we view the evidence, the relationship that existed between appellant and the witness was nothing more than an illicit one. Marriage is more than a contract; it is a status in which stability and permanence are vital. This is particularly true when dealing with common-law-marriages where the agreement should be specific from both sides. We follow the rule applied in civil cases. The claim of common law marriage will be closely scrutinized. Welch v. State, supra.

If we are in error in our construction of the evidence and the issue of common law marriage was raised, the failure to complain that the issue was not submitted to the jury, or to request that it be submitted, waived the error. The evidence does not show as a matter of law that the witness was the common-law wife on the defendant.

The judgment is affirmed.