Aviles-Sanchez v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-022-CR

        PEDRO AVILES-SANCHEZ,

                                                                                       Appellant
        v.

        THE STATE OF TEXAS,

                                                                                       Appellee
 

From the 13th District Court
Navarro County, Texas
Trial Court # 25,450
                                                                                                    

O P I N I O N
                                                                                                    
 
          The appellant, Pedro Aviles Sanchez, was convicted of murder in Navarro County and
sentenced to life in prison plus a $10,000 fine. Tex. Penal Code Ann. § 19.02 (Vernon 1994). 
Sanchez brings four points of error charging that the trial court erred: 1) in not granting his
challenge to the array; 2) by sustaining the State's objection to the presentation of character
witnesses; 3) when it denied Sanchez's motion for a new trial on the grounds that the State failed
to disclose any agreements between itself and the accomplice witness; and 4) because the evidence
was insufficient to convict Sanchez due to the fact that the State failed to offer sufficient
corroboration of an accomplice witness's testimony. We will affirm the judgment of the trial
court.
          In his first point of error, Sanchez claims that the trial court erred in not granting his
challenge to the array.
          The trial court was to begin jury selection on October 3, 1994. After the roll of jurors was
called, and after those present had exercised their exemptions, only 26 potential jurors remained. 
The trial court decided to recess the proceedings and instructed the District Clerk to contact jurors
on the original list or to draw additional names from the computerized jury wheel system and have
the potential jurors appear in the District Court at 9:00 a.m. the next morning. The District Clerk
pulled an additional 40 names from the computer and forwarded the list to the Navarro County
Sheriff. The Sheriff's Department attempted to contact persons on the list by telephone and have
them appear the next day in the District Court. The department did not attempt to contact persons
on the list by any other method. Of the 40 additional jurors drawn, only 10 were available for
service. Of the 30 individuals remaining, 13 did not have telephones. No attempt was made to
contact these potential jurors. With more jurors still needed, a second list of 40 names was drawn,
and the same procedure was followed. From this list, 8 more potential jurors were not contacted
because they did not have telephones. 
          On October 4, Sanchez filed a motion challenging the array because he claimed that the
method used to contact jurors systematically excluded minorities from the array of additional
jurors. The trial court held a hearing on the motion that same day. Sanchez argued that a
disproportionate number of Mexican-Americans and African-Americans allegedly did not own
phones, and therefore, telephoning potential jurors effectively excluded them from the jury panel. 
Neither Sanchez nor the State requested an attachment of the absent jurors. At the hearing, the
District Clerk testified that the additional jurors were contacted by phone so as not to cause any
additional delay. The trial court denied the motion.
          In order to properly challenge an array of jurors, a party must allege in writing that the
officer summoning the jury has willfully summoned jurors with a view towards securing a
conviction or acquittal. Tex. Code Crim. Proc. Ann. art. 35.07 (Vernon 1992). Furthermore,
when the challenge is made by the defendant, it must be supported by his affidavit or the affidavit
of any credible person. Id.
          In the present case, Sanchez has failed to frame his objection in the terms required by
article 35.07. While Sanchez has properly filed an affidavit, he has neglected to allege that any
of the officers involved willfully summoned the additional jurors by telephone in order to obtain
a conviction. Sanchez's challenge to the array alleged in part:
Persons who could not be reached by phone were excluded from the jury panel. 
Persons who did not have phones were excluded. Residents of Navarro County
who work, who are African American and who are Mexican American were
systematically excluded from the jury panel in that a disproportionate number of
African Americans and Mexican Americans do not have phones. The telephone
directory does not represent a cross section of the community. Due to the fact that
the array in the instant case was summoned unlawfully, it should be discharged,
and other jurors summoned in their stead, selected by lawful means.

          The improper or unlawful summoning of potential jurors is not evidence alone of willful
intent. See Cooks v. State, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992), cert. denied, — U.S.
—, 113 S.Ct. 3048 (1993). At the hearing, the District Clerk testified that the additional jurors
were contacted by telephone in order to avoid additional delay in the commencement of the trial. 
Moreover, Sanchez has failed to produce any evidence, other than his own lawyer's testimony at
the hearing, that potential minority jurors were less likely to have telephone service than other
prospective jurors.
          Sanchez does not even allege, or for that matter present any evidence, that the officers
involved acted "willfully" in summoning jurors in an attempt to influence the jury verdict. 
Because Sanchez did not raise the proper grounds or present proper evidence to challenge the
array, we overrule his first point.



          In his second point of error, Sanchez claims that the trial court erred in sustaining the
State's objection to the presentation of character witnesses under Rule 608(a) of the Texas Rules
of Criminal Evidence. Tex. R. Crim. Evid. 608(a). 
          Rule 608(a) provides:
The credibility of a witness may be attacked or supported by evidence in the form
of opinion or reputation, but subject to these limitations: (1) the evidence may refer
only to character for truthfulness or untruthfulness, and (2) evidence of truthful
character is admissible only after the character of the witness for truthfulness has
been attacked by opinion or reputation evidence or otherwise.

Id.
           The rule is well-established that a defendant may put on opinion and reputation testimony
to show his good reputation for truth and veracity when the State has attacked his general
reputation for truthfulness by any witness or has attempted to impeach the defendant by proving
contradictory statements. Stewart v. State, 587 S.W.2d 148, 152 (Tex. Crim. App. 1979). 
However, a defendant's reputation for truth and veracity is not put into question simply because
the State presents testimony in dispute with that of the defendant's testimony. Id. In the absence
of an attack on the credibility of a witness, testimony as to the witness's character for truth and
veracity is improper bolstering. See O'Bryan v. State, 591 S.W.2d 464, 476 (Tex. Crim. App.
1979), cert. denied, 446 U.S. 988, 100 S.Ct. 2975 (1980).
          In the present case, Sanchez claims that the trial court erred in excluding his reputation
witnesses. Sanchez attempted to call two witnesses to testify as to his reputation for truthfulness. 
The trial court sustained the State's objection to the testimony on grounds that it would constitute
improper bolstering. Sanchez preserved his error on appeal by presenting the testimony in a bill
of exception. 
          He claims that the State opened the door for the admissibility of reputation witnesses as to
his truth and veracity when the State cross-examined him and also because of the presentation of
Officer Lewis Palos as a rebuttal witness. 
          Officer Palos's testimony at trial dealt with his belief that Sanchez felt ill will toward the
victim. Sanchez had earlier testified that he did not have any difficulty or disagreement with the
victim. However, Palos never testified as to any particular statement made by Sanchez that
conflicted with the officer's testimony. In addition, the State did not call Officer Palos or any
other witness to testify concerning Sanchez's bad reputation for truthfulness.
          The State has not impeached Sanchez through contradictory statements or attacked his
general reputation for truth and veracity. The fact that Palos's testimony was in dispute with the
defendant's statements does not create an attack upon the defendant's credibility. 
          In addition, Sanchez's reputation has not been compromised because the State cross-examined him. A defendant has not been impeached simply because he has been subjected to
vigorous cross-examination if he does not vary from his original account of what happened. Acker
v. State, 421 S.W.2d 398, 401 (Tex. Crim. App. 1967). In order to bolster the testimony of the
witness, a party must have been placed in the attitude of having changed his testimony or testified
differently now from what he had previously stated. Id. Sanchez did not deviate from his original
story. 
          Sanchez cites Thomas v. State, 629 S.W.2d 128, 129-30 (Tex. App.—Dallas 1982, pet.
ref'd), for the proposition that evidence of a witness's truthfulness may be admissible if the State
asks questions implying that the witness is not worthy of belief. However, the facts in Thomas
can be distinguished from the present case. In Thomas, the defendant was questioned as to his
post-arrest silence for the purpose of showing that the defendant recently fabricated his defense. 
The court held that questions implying that the witness had recently fabricated his testimony, and
therefore was not worthy of belief, would constitute an attack on the credibility of the witness See
id. at 130. In the present case, the State did not ask any questions of Sanchez that implied that he
was lying or try to impeach him through prior inconsistent statements. Therefore, we overrule
Sanchez's second point of error.
          In his third point, Sanchez claims that the trial court erred in denying his motion for new
trial on the grounds that the State failed to disclose any agreements between the State and the
accomplice witness. 
          As part of the pre-trial proceedings, Sanchez filed a motion to require the State to disclose
any agreements it had entered into with its witnesses. The prosecutor, John Jackson, informed
the trial court that he planned to use Nicholas Macedo-Sanchez as an accomplice witness. 
          Nicholas Sanchez is the nephew of the defendant. At the time of the murder, he had been
living at Sanchez's home in Corsicana. Nicholas Sanchez had also been charged with the murder
of the victim. On April 13, 1994, at approximately 12:00 a.m. in the morning, Sanchez had
Nicholas Sanchez drive him to the Navarro Pecan Company where the victim, Gabriel Arredondo,
was waiting in his car to pick up his wife from work. 
          At the hearing on the motion for new trial, Jackson testified that he had met with Nicholas
Sanchez on a couple of occasions and that he told him that, based on their interviews and the
results of his polygraph test, he would re-evaluate his case at some point. Jackson also discussed
with Nicholas Sanchez's attorney, Robert C. Dunn, the possibility of dismissing the charges, as
well as the possibility of deporting Nicholas Sanchez back to Mexico. However, Jackson stated
that at no time did he ever promise or agree to do anything more than re-evaluate the case
sometime in the future.
          Sanchez argues that the State and Nicholas Sanchez had entered into a "secret" agreement
to drop the charges against him in exchange for testifying against the defendant. Nicholas Sanchez
later testified against his uncle. Approximately five days after Sanchez's conviction, the charges
against Nicholas Sanchez were dropped. He was charged and pled no contest to the offense of
hindering apprehension and sentenced to one year in jail. Nicholas Sanchez testified that he had
not made any deals with the State in exchange for his testimony. However, he also testified that
he believed he was going home to Mexico after he testified. Sanchez claims that because he
believed he was going home there must have been a deal to dismiss the charges and have him
deported.


 
          At trial, Sanchez called Dunn to testify concerning any possible agreements between his
client and the State. He testified that the State had not made any agreements or promises other
than to look at the case again in the future. He also stated that he believed that the State would
not be able to convict Nicholas Sanchez and that he had "great aspirations" that the charges would
be dismissed. He further testified that there was information unknown to the jury that would bear
upon the way his client would be dealt with.  
          The purpose of informing the trial court and jury of any agreements, formal and informal,
is to ensure that the trier of fact will take into account the implications of such an agreement when
weighing the veracity of the testimony. See Virts v. State, 739 S.W.2d 25, 27 (Tex. Crim. App.
1987). In the present case, Sanchez has failed to produce any proof that the prosecution has
suppressed evidence of an agreement. While it is true that the prosecutor promised to re-evaluate
the case at a future time, he made no promise either express or implied that Nicholas Sanchez
would benefit if he testified against his uncle. He further testified that he specifically did not make
an agreement with Sanchez because he feared that it would compromise Nicholas Sanchez's
testimony. The record shows, that even if the promise to re-evaluate the case in the future could
be considered an agreement, the jury was informed of the testimony at trial. The trier of fact was
free to weigh the credibility of the testimony of Nicholas Sanchez in light of his statements about
deportation and the fact that he knew his case would be looked at again in the future. Therefore,
we overrule Sanchez's third point. 
          In his fourth point of error, Sanchez claims that the evidence was insufficient to convict
him of the offense of murder. Specifically, he argues that the State failed to offer sufficient
corroboration of the accomplice witness's testimony to convict him under article 38.14 of the Code
of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). We will
overrule this point.
          Article 38.14 states:
A conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the offense
committed; and the corroboration is not sufficient if it merely shows the
commission of the offense.

Id.
          The test to determine the sufficiency of the corroboration is "to eliminate from
consideration the evidence of the accomplice witness and then to examine the evidence of the other
witnesses with the view to ascertain if there be inculpatory evidence, that is evidence of
incriminating character which tends to connect the defendant with the commission of the offense." 
Gosch v. State, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991), cert. denied, — U.S. —, 113 S.Ct.
3035 (1993) (quoting Edwards v. State, 427 S.W.2d 629 (Tex. Crim. App. 1968)). All direct and
indirect evidence may be looked to for corroboration. Brown v. State, 672 S.W.2d 487, 488 (Tex.
Crim. App. 1984). Furthermore, it is not necessary that the corroborative evidence directly link
the defendant to the crime or be sufficient in itself to establish guilt. Id. Even apparently
insignificant incriminating evidence may sometimes be considered satisfactory corroboration. 
Munoz v. State, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993). The cumulative weight of the
other corroborating evidence must merely tend to connect the defendant with the offense. Id. 
                                        Accomplice Testimony
          The accomplice witness, Nicholas Sanchez, testified that he participated with Sanchez in
the murder of Gabriel Arredondo at the Navarro Pecan Company. He stated that on the night of
the murder Sanchez asked him to take him to the pecan factory. When they arrived, the defendant
told Nicholas Sanchez to "go by the vehicle where it's closest." As they drove by the vehicle,
Nicholas Sanchez said that he heard five shots and saw the window of the victim's vehicle shatter. 
He then stated that Sanchez had fired the shots. He further testified that the defendant told him
to drive straight home and that they should both go to their respective rooms.
                                        Non-accomplice Testimony
          The State presented evidence of a dispute between Sanchez and the victim that provided
him with a motive for the murder of Arredondo. Arredondo's wife, Bernadina, testified that
Sanchez was upset because his fourteen year old daughter had run off with her husband's half-brother, who was around 23 or 24 years of age. She stated that she felt that Sanchez held her
husband responsible for his daughter's disappearance. Furthermore, she testified that Sanchez had
come to her home in June 1993 to discuss the situation with her husband. She stated that Sanchez
threatened her husband and that he had grabbed her husband "by the arm and took him on the
street." 
          Sanchez, himself, testified that he had gone to the victim's house on two occasions to
discuss the situation concerning his daughter. He also testified that he had gone to the police to
enlist their aid in finding his daughter. When asked why he had gone to the victim's house, he
replied that some children were saying that the defendant's daughter had been taken in by
Arredondo. 
          Officer Lewis Palos also testified that Sanchez was upset because his daughter had run
away with another person and that he had expressed anger toward the victim. Palos testified that
"he spoke rather harshly at times that he didn't feel like we were doing enough to find her, to get
Mr. Arredondo to tell us where she was at." He also confirmed that the difficulty between
Arredondo and Sanchez was well known throughout the Hispanic community. Furthermore,
Officer Palos testified that when he told Sanchez that Arredondo had been killed the defendant
stated that it was good that he died and cursed him in Spanish. 
          The State also produced other corroborating evidence linking Sanchez to the murder. The
defendant had purchased a Smith and Wesson 9 millimeter pistol and a box of 9 millimeter
Norinco military ammunition from a gun shop approximately one week before the victim was shot. 
Both Sanchez and the gun shop owner testified as to the transaction.
          Raymond Cooper, a firearms and tool mark examiner at the Southwest Institute of Forensic
Science in Dallas, also testified for the prosecution. Arredondo died of three gunshot wounds to
the torso, and one bullet was recovered from the body. Cooper testified that the bullet was a 9
millimeter bullet consistent with the Norinco manufactured ammunition. He further testified that
the bullet casings submitted to him by the Corsicana Police Department were also of Norinco
manufacture. He testified that the bullet he examined from the body bore tool marks consistent
with being fired from only three possible guns, a Smith and Wesson pistol, a Smith and Wesson
revolver, or a Ruger revolver. He stated that the Ruger revolver could most likely be eliminated
from firing these particular bullets because the ammunition was fired from a semi-automatic
weapon. Furthermore, he stated that 9 millimeter revolvers that shoot 9 millimeter auto-pistol
ammunition are rare, and that in his opinion, the bullets were fired from a pistol. This evidence
tends to show that the gun used to kill Arredondo was most likely of the same make and model
as the firearm purchased by Sanchez. Moreover, the evidence shows that Sanchez had purchased
ammunition a week before the murder that was of the same caliber and manufacture as the bullets
that killed Arredondo.
          The State also produced other corroborating evidence linking Sanchez to the offense. 
Officer Mark Nanny of the Corsicana Police Department testified that he collected four 9
millimeter bullet casings at the crime scene and that he had observed broken glass around the
victim's vehicle that appeared to have come from the broken driver's window. A witness at the
pecan factory tentatively identified the vehicle used in the shooting and directed Officer Nanny to
Sanchez's house on South 15th street. When Nanny arrived at Sanchez's home, he testified that
he looked at Nicholas Sanchez's vehicle parked in the driveway. He stated that he observed
broken glass on the cushion of the right front seat and that all window glass on the car was intact. 
He also testified that he observed a fifth 9 millimeter casing on the right rear floorboard of the
vehicle that was later identified as also being of Norinco manufacture.
          When viewing all of the corroborating facts and circumstances as a whole, it is clear that
the evidence tends to connect Sanchez to the commission of the offense. There is evidence of an
ongoing dispute with the victim. In addition, he had purchased bullets identical to the one used
to kill Arredondo, and he had bought a gun of the same make and model as the probable murder
weapon. In addition, the glass and the bullet casing were found in his accomplice's vehicle parked
outside his house, while both parties were present at the house. And finally, Sanchez reacted to
the news Arredondo was dead by cursing him and saying that it was good that he was dead. We
find that the evidence was sufficient to corroborate the testimony of the accomplice witness and
overrule Sanchez's last point of error. 
          The judgment is affirmed.
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Justice Cummings and
          Justice Vance
Affirmed
Opinion delivered and filed March 13, 1996 
Do not publish