**Antonio ALMARAZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 36459.**

Court of Criminal Appeals of Texas.

March 4, 1964.

Rehearing Denied April 22, 1964.

Werner A. Gohmert, John G. Gonzalez, Alice, for appellant.

Sam H. Burris, Dist. Atty., J. L. Campos, Asst. Dist. Atty., Alice, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The offense is murder; the punishment, 20 years.

Appellant and Maria were both divorced and began to live together. With them was Maria's young daughter by her previous marriage, and her father and stepmother lived with them for a while. After a year or so of such cohabitation, appellant went to his family and Maria to her relatives. According to Maria, prior to their separation appellant threatened to kill any man she might marry if she ever left him.

Some few months later Maria met deceased, and within a week they decided to get married, though no marriage ever took place.

According to appellant, the deceased told him some two weeks before the homicide that he knew about him and Maria, and that if he (appellant) ever got in his way, he (deceased) "was going to kill himself a Mexican."

This brings us to the fatal evening. Deceased and Maria were seated in deceased's pick-up in front of a drive-in drinking beer when appellant drove up and entered the establishment. A short time later, he came out and went to his automobile and then pointed a .22 rifle at deceased and challenged him to a fist fight. Deceased accepted the challenge, got out of his pick-up unarmed, and told appellant to put up his rifle. This appellant did and took off his shirt. From this point forward, Maria's and appellant's testimony differ. She stated that after putting his shirt in his automobile, appellant again took out his rifle and shot deceased, who was unarmed. She stated that deceased said, "The fool, he shot me. * * * Hand me the rifle." She further testified that she attempted to hand deceased the rifle, which was on the floor of his pick-up, but the rifle fell· to the ground where the men fought until she was able to pick up one of the rifles and ·subdue appellant by hitting him on the head. She then fled the scene in appellant's automobile, taking both rifles.

Appellant testified that as he was putting his shirt in his automobile, he saw deceased holding a rifle and trying to load it or cock it, and that he shot the deceased in self defense.

Deceased died some 36 hours later as the result of one .22 caliber bullet wound in his abdomen. Officers recovered both weapons from Maria at her uncle's house.

The first question is the competency of Maria to testify. The court first heard testimony in the absence of the jury on the question of whether a marriage between appellant and Maria was shown as a matter of law. He concluded that such was not established, permitted the jury to hear evidence on the question, and then instructed them in his charge that if they found that a common law marriage had existed between appellant and Maria and that they had not been divorced, Maria's testimony could not be considered for any purpose. He further told them that for a valid common law marriage to exist there must be (1) an agreement to become husband and wife, (2) a living together pursuant to such agreement, and (3) a holding out of each other to the public as husband and wife.

Maria was emphatic in her statement that there was no agreement and no holding out. One of their landlords testified that she paid the rent by check made out in her maiden name. Appellant was unable to produce any witness who would testify that appellant had ever introduced Maria as his wife or that she had introduced him as her husband, or that she had .ever used his name as her own. We have concluded that the jury were authorized from this record to conclude that no common law marriage was shown, and therefore, Maria's testimony was available for the prosecution.

Appellant leveled six objections to the court's definition of malice aforethought in the charge. He recognizes that this Court has consistently through the years and as recently as Glenn v. State, 172 Tex.Cr.R. 513, 360 S.W.2d 146, approved the charge as given, but urges that we reconsider our prior holdings. Though there may be conceivable academic merit in appellant's claim, we would not be justified in overruling the prior holdings of this Court unless they were patently wrong. We have been unable to bring ourselves to the conclusion that an accused is in any wise injured by this charge which has withstood objection thereto through the years.

■ Appellant next complains of the forms of verdict furnished the jury. They were as follows:

"* * * not guilty * * *

"* * * guilty of murder with malice aforethought * * *

"* * * guilty of murder without malice * * *."

He contends that the omission of the word "aforethought" following the word "malice" in form number 3 deprived the jury of the opportunity of finding appellant guilty of murder without malice aforethought. The court's charge and the forms of verdict furnished the jury follow the applicable statutes. Article 1256, 1257b and 1257c Vernon's Ann.P.C.

■ Finding the evidence sufficient to support the conviction and no reversible error appearing, the judgment is affirmed.