George Henderson **SHIRLEY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 46565.

Court of Criminal Appeals of Texas.

Nov. 28, 1973.

C. C. Divine, Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis Bell, George Karam, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

QUENTIN KEITH, Commissioner.

The jury convicted appellant of the theft of a pickup truck of the value of the more than $50 and assessed his punishment at confinement for ten years.

The State established that Mrs. Ray W. Dodgen owned a 1969 half-ton Chevrolet pickup truck which she had loaned to one Larry Joe Pair who parked the truck in his front yard in Harris County on November 23, 1970. That was the last time Pair saw the truck and it was established that the consent or permission of Mrs. Dodgen or Mr. Pair was not given for anyone to take the vehicle. Mrs. Dodgen's truck, according to the State's testimony, had a white cab, a maroon body, and was equipped with a camper type truck cover. She had made some peculiar adaptations to this particular truck by drilling holes in the bed of the truck and others upon the dash for the automatic brake control, all of which the witnesses explained to the jury. Her truck

was equipped with a step bumper bearing the dealer's name: "Bud Moore Chevrolet."

Sometime after the disappearance of her truck from Pair's yard, Mrs. Dodgen saw her truck in the storage yard of the Houston Police Department. It had been extensively modified in that the seat covers, the floor rug, the steering wheel, the bumper, and the frame were different. The bumper on the vehicle at the police station bore the legend: "Ramsey Chevrolet, Inc." Additionally, the truck had been repainted. Mrs. Dodgen was corroborated in her identification of the truck by her son, Kenneth Dodgen, who told of the alterations or holes which he had drilled in the Dodgen vehicle. Kenneth testified that, notwithstanding the modifications, it was Mrs. Dodgen's vehicle which he inspected at the police storage yard.

George Nations, a wholesaler of used automobiles, testified that he had known appellant for about six months, during which time he had bought several automobiles from him. On December 18, 1970, appellant brought a truck and offered to sell it to the witness, presenting a certificate of title showing title in one "Quint Booth", but told the witness that he was the owner and asked $1900 for the vehicle. Nations called the police who, armed with a warrant, arrested appellant and seized the truck. Upon the trial, Nations identified pictures of the vehicle taken at the police station yard (Mrs. Dodgen's truck) as being the one which appellant had offered to sell to him.

Detective Gartman of the auto theft division of the Houston Police Department examined the truck seized at the time of the arrest of appellant, and testified that the identification number of the truck had been attached to the inside of the door by "pop rivets" rather than with rivets applied in the factory. The confidential identification number stamped upon the frame of the truck corresponded with the number upon Booth's certificate of title. It was

established that Booth's truck was demolished in a crash in which has stepson had been killed; the wreckage was eventually sold to one Eddie Romans, a salvage dealer in Houston who, in turn, sold it to appellant, delivering the title and identification plates to him.

One J. L. Weidner, then serving a six year sentence for auto theft, was offered as an accomplice witness by the State. He testified that one Joe Schmidt stole a 1969 Chevrolet truck, maroon and white. Weidner said that he was present when Schmidt agreed with appellant to steal a 1969 or 1970 Chevrolet pickup truck for which appellant was to pay Schmidt $300 when it was sold. According to Weidner, the Dodgen truck was delivered to appellant's home in Montgomery County and stripped and identification numbers from the Booth wrecked vehicle were used upon the Dodgen vehicle. This included a change in frame, a change of bumpers, repainting, etc.

It was shown that appellant had already acquired the wreckage (and papers) of the Booth vehicle before his conversation with Schmidt, so all that he needed was another truck of similar vintage which could be used with the Booth vehicle frame and, with superficial modifications, sold under the Booth title. We have photocopies of many pictures as well as other documentary evidence in the record which the parties insist show the modifications more in detail. Perhaps such was the purpose of counsel in presenting such material to the jury. However, as presented to this court, such evidence is completely worthless— nothing being revealed with sufficient clarity to enable us to do more than accept the words of the witness as to what is or is not shown thereon.

The appellant offered the defense of alibi which was rejected by the jury. The court charged upon the law of principals and charged the jury that the witness Weidner was an accomplice as a matter of law.

By his first ground of error, appellant contends that the trial court erred in overruling his motion for a peremptory instruction at the conclusion of the State's evidence. After the State rested its case, the appellant put on his defense. We are not required to pass upon the contention that the evidence was insufficient at the time the State rested its case. Bellah v. State, 415 S.W.2d 418, 420 (Tex.Cr.App., 1967); Davis v. State, 440 S.W.2d 291, 293 (Tex.Cr.App., 1969). Ground one is overruled.

By his fifth ground of error, appellant contends that the evidence is insufficient to sustain a conviction as a principal in the crime of theft.

As was said in White v. State, 478 S.W.2d 506, 508 (Tex.Cr.App., 1972): "Considering the evidence in the light most favorable to the jury's verdict, as this court is required to do, we find it sufficient to support the verdict." Ground five is overruled.

Although appellant's second ground of error asserts that the trial court erred in refusing his requested charge on the law of principals, his record reference is not to a requested charge but to his objections to the charge on the law of principals. The thrust of this ground of error is that the appellant could not be convicted as a principal "since the offense of theft was complete when Joe Schmidt reduced the pickup truck to his possession on November 23, 1970, it is shown by the record that the Defendant did not participate, aid or encourage in the commission of the offenses."

He argues now that while the facts introduced may have been sufficient to convict him as an accomplice, "an accomplice cannot be found guilty as a principal," hence the charge was erroneous.

The argument overlooks the testimony that Schmidt by prior agreement was to be paid only after appellant had sold the stolen truck; thus, Schmidt retained an interest therein until paid. In Spivey v. State, 144 Tex.Cr.R. 432, 164 S.W.2d 668, 672 (1942), the Court set out the contention of the State and made this holding:

"The State contends that under the facts appellant can be held guilty as a principal upon the theory that where persons enter into a conspiracy by the terms of which one person is to steal the property and deliver it to another of the conspirators who, though not present at the theft, shall sell the same and divide the proceeds, that the party to such conspiracy who converts the property to money and divides the proceeds pursuant to the previous agreement is a principal whether or not he was present at the time the theft was actually committed. *If Mosely [the thief] retained an interest in the cigarettes until they were sold by appellant and his part of the money from the sale was paid over to him by appellant, there is no doubt of the soundness of the State's position.*" (emphasis supplied)

Perceiving no error, ground two is overruled.

In ground three, appellant complains of the refusal of his requested charge but an examination of the record reference shows that it was not a request for a charge, but an objection thereto. His objection was that there was no instruction in the main charge informing the jury that they could not convict appellant "as a principal or accomplice or both or that he was a receiver of stolen property where he was indicted only for theft." Our comments as to ground two need not be repeated at this point. Ground three is overruled.

In ground four, appellant contends that the court erred in overruling his objections to questions propounded to appellant's wife in cross-examination by the State. Appellant tendered his wife as an alibi witness but her testimony ranged far afield and included many other areas involved in the trial.

She testified that on Sunday, November 22, appellant was at home cutting up a deer which had been killed recently; that while she knew Weidner and that her husband had done business with him, Weidner was not at her house in Conroe upon that date. This was offered to refute Weidner's testimony as to the conversation mentioned earlier between Schmidt and appellant about stealing a truck. Mrs. Shirley testified that Weidner had brought truck parts to appellant's place of business, including a cab and a bumper which appellant placed upon a wrecked truck. For some reason, she was asked: "Who keeps the purse strings in your family?" She answered that appellant did so.

Other evidence brought out on direct examination included references to appellant's work upon wrecked trucks, the location of the Shirley home, its relatively secluded spot, etc. Her direct examination takes up ten pages in the record.

Upon cross-examination she was asked if appellant had done business with G. & M. Autos and, without objection, answered: "I don't know." Appellant's objection then made, that the cross-examination exceeded the scope of the direct examination, was overruled and the State's counsel continued as to appellant's selling cars and trucks for Weidner. She was then asked if she knew her husband's handwriting, answered affirmatively, and was asked to examine a copy of a check. Appellant then objected: "I object. That exceeds the scope of the Direct Examination," but the objection was overruled. She then identified a check dated October 21, 1970, from G. & M. Autos to appellant bearing appellant's indorsement. No objection was made to this testimony nor was any motion made to expunge it from the record. She proceeded to testify that she knew Eddie Romans who did body work and knew where his place of business was located. Again, there was no objection.

■ ■ We recognize and give full application to the rule that a wife may not be required to give testimony against her husband. Art. 38.11, Vernon's Ann.C.C.P.; 1 Branch's Annotated Penal Code (2d ed. 1956) § 171, p. 176. But, we are also familiar with the rule that an appellant must object to testimony he considers inadmissible at the earliest opportunity. Martinez v. State, 437 S.W.2d 842, 847 (Tex.Cr.App., 1969); Merx v. State, 450 S.W.2d 658, 659 (Tex.Cr.App., 1970).

As to the first objection brought forward, it is apparent that no error is reflected. The witness had already answered the question in the negative and the matter was not further pursued. Moreover, appellant made no request for any further action on the part of the trial court.

■ As to the second question propounded, even if it be conceded that the question was improper, reversible error is not shown. The evidence was merely cumulative of that given earlier by the State's witness Nations that he had bought automobiles from appellant. Moreover, it did not relate to the question of appellant's guilt of the offense for which he was on trial.

It was said in Newby v. State, 384 S.W.2d 133, 136 (Tex.Cr.App., 1964): "Under this article [presently appearing as *Art. 38.11,* supra] it is only *new incriminating evidence* brought out against the husband through the wife that constitutes reversible error." (emphasis supplied)

Considering the record as a whole, we are of the opinion that the questions objected to were not so obviously harmful as to require reversal. Ortega v. State, 462 S.W.2d 296, 307 (Tex.Cr.App., 1970). Ground four is overruled.

The judgment of the trial court is

Affirmed.

Opinion approved by the Court.