**Gilbert Hernandez AGUILAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–82–00468–CR.**

Court of Appeals of Texas, Dallas.

Sept. 13, 1983.

---

Arch C. McColl, Dallas, for appellant.

Henry Wade, Dist. Atty., Karen Beverly, Asst. Dist. Atty., for appellee.

Before CARVER, ROWE and STEW-ART, JJ.

CARVER, Justice.

Gilbert Hernandez Aguilar appeals his conviction, and enhanced sentence of life imprisonment, for voluntary manslaughter. We affirm.

Aguilar was tried before a jury on a charge of the murder of M.L. Douglas. Aguilar did not testify but, within his confession he stated:

On November 26, 1981 sometime after the hours of darkness, I was in my apartment. My girlfriend, Mildred Williams and a black male named Doug was in my apartment with me. I took out some trash and when I returned to my apartment Doug had his hands on Mildred. Doug jerked his hands away from Mildred when I entered the room. I did not say anything to Doug about him putting his hands on Mildred. I was cleaning up the apartment and carrying out trash. When I came back into the apartment, Doug had his hands on Mildred again. I told Doug "man you are going to have to leave." Doug laughed, and said, "Gilbert what you mean man." I told Doug, "you know what I mean." I open my closet and took out a 12 gage double barrel shotgun. I did not point it at Doug, but I wanted him to see that I meant business. I told Doug this was my home and I say who leaves and who don't. Doug said, "Gilbert you don't fuck with me," and then he jumped up out of his chair. Doug took a step toward me, and I jerked the shotgun up, pointed it at him. I thought Doug was going to jump me. I then pulled the trigger and shot Doug one time. I had to calm Mildred down and then I told her to call the police.

The State called Mildred Williams to testify, but Aguilar objected on the ground that Mildred was his common-law wife. After a hearing, out of the presence of the jury, the Court determined that Mildred was not the wife of Aguilar and permitted her to testify that, while she was in the room where the shooting occurred, she was drunk; was suffering from an abscessed tooth; was weary from having cooked, served, and cleaned up Thanksgiving dinner for 12 people; was exposed to extremely loud "rock" music; and consequently, she was unable to affirm or deny any of the events described in Aguilar's confession. The jury was charged, without objection, upon murder and voluntary manslaughter, as well as instructed as to self-defense, and returned their verdict of guilty of voluntary manslaughter.

■ Aguilar first complains of the charge's inclusion of voluntary manslaughter on the ground that the evidence did not raise this issue. We disagree. Aguilar's confession raised the issue and his examination of the State's witnesses sought to reinforce his confession in this particular. *See Medlock v. State,* 591 S.W.2d 485 (Tex.Cr. App.1979); *Roberts v. State,* 590 S.W.2d 498 (Tex.Cr.App.1979).

Aguilar also complains of the finding by the trial court that Mildred Williams was not his common-law wife; the exclusion of the testimony of the witness Espinosa on the issue of whether a common-law marriage existed; and of the trial court's failure to charge the jury on the issue of common-law marriage. The State responds that the evidence was insufficient to warrant submission of the issue of common-law marriage to the jury; that the excluded testimony of the witness Espinosa would have been merely cumulative of other testimony and was conclusory in any event; and that the failure to charge the jury was justified because of the insufficiency of the evidence; moreover, the evidence of the supposed common-law wife was not incriminating, or harmful, to Aguilar. We agree with the State that no reversible error is shown by this record.

■ The disqualification of a husband, or a wife, as a witness against the other spouse, with stated exceptions, is presently provided by Art. 38.11 Tex.Code Crim.Proc. (Vernon 1979), stating:

Neither husband nor wife shall, in any case, testify as to communications made by one to the other while married. Neither husband nor wife shall, in any case, after the marriage relation ceases, be made witnesses as to any communication made while the marriage relation existed except in a case where one or the other is on trial for an offense and a declaration or communication made by the wife to the husband or by the husband to the wife goes to extenuate or justify the offense. *The husband and wife may, in all criminal actions, be witnesses for each other, but except as hereinafter provided,*

*they shall in no case testify against each other in a criminal prosecution.* However, a wife or husband may voluntarily testify against each other in any case for an offense involving any grade of assault or violence committed by one against the other or against any child of either under 16 years of age, or in any case where either is charged with incest of a child of either, or in any chase where either is charged with bigamy, or in any case where either is charged with interference with child custody, or in any case where either is charged with nonsupport of his or her spouse or minor child. [emphasis added]

The case precedent of our State applying Art. 38.11 has, in most instances, addressed causes in which the status of husband and wife was not in dispute; however, a few causes have also dealt with a disputed status of husband and wife raised in a criminal case by a claim of "common-law marriage" between the accused and a witness in the case, as is raised here by Aguilar. While even calling a ceremonial spouse to the stand by the State has been declared reversible error, *Burns v. State,* 556 S.W.2d 270 (Tex.Cr.App.1977), an asserted common-law spouse must be proved to have such status before Art. 38.11 may be asserted. The issue is one of fact to be determined by the trier of the fact. *Hightower v. State,* 629 S.W.2d 920 (Tex.Cr.App.1981). However, a claim of common-law marriage will be closely scrutinized by the courts and the agreement of marriage should be specific on both sides. *Hightower, supra; Chatman v. State,* 513 S.W.2d 854 (Tex.Cr.App.1974).

■ In order to raise the issue of common-law marriage, the evidence must reflect that the parties had "an agreement presently to become man and wife, a living together pursuant to the agreement and cohabitation as husband and wife, and a holding out of each other to the public as husband and wife." *Hightower, supra; Achie v. State,* 511 S.W.2d 942 (Tex.Cr.App. 1974). Should a claim of common-law marriage between a witness summoned by the State and the accused be raised, and should some evidence of the foregoing elements be offered in a trial held before a jury, then the issue should be submitted to the jury with instructions as to such elements and that, should the jury find the existence of the common-law marriage, the evidence of the witness-spouse must be disregarded by the jury in arriving at their verdict. *Krzesinski v. State,* 169 Tex.Cr.R. 178, 333 S.W.2d 149 (1960). In our case, no such instruction was given.

■ With the foregoing authorities in mind, we turn to the record presented in this case. Aguilar did not testify; however, his confession, a portion of which was offered by the State and the remaining portion was offered by Aguilar, described the witness claimed to be his common-law spouse as "My girlfriend, Mildred Williams . . . ." Mildred herself testified that, while she moved in with Aguilar and cohabited with him as husband and wife, they didn't get "married legally . . . for economic reasons. I was helping support my niece and her three small children, and she had just started a job, and as soon as she got on her feet *we'd planned to be married then.*" (emphasis added). The witness, Pamela Sefcik, responded "yes" to the question "Do you know of your own knowledge whether or not they (Aguilar and Williams) lived together there as man and wife by agreement between themselves, with the intention of marrying?" The witness, Frank Aguilar, responded "yes" to the question "And you know that—of your own knowledge that they (Aguilar and Williams) were living as man and wife with intentions of marriage?" The witness, Eloise Espinosa, by bill of exception to the exclusion of her testimony on this point, would have answered "yes" to the question "Did they (Aguilar and Williams), to your knowledge, have an agreement between themselves to become husband and wife?" While the foregoing evidence is weak at its best, we conclude that the issue of common-law marriage between Aguilar and Williams was raised and should have been submitted to the jury; however, we must also determine whether the error warrants reversal.

The testimony elicited by the State from Mildred Williams was neither incriminating nor exculpatory in its character. The jury was entitled to *hear* and considered any exculpatory testimony but only *consider* incriminating testimony if the claimed common-law marriage was found not to exist. Presuming the jury *considered* Mildred's testimony due to the absence of the proper instructions in the charge, the question is whether we should reverse because the jury *considered* evidence that was negative, i.e., neither incriminating nor exculpatory of Aguilar. Neither counsel, nor this Court, has discovered any direct precedent applicable to these circumstances; however, in *Spicer v. State*, 115 Tex.Cr.R. 110, 28 S.W.2d 810 (1930), it was held that a witness-spouse's negative answer as to existence of a communication with the other spouse did not violate the interspousal communication privilege. Consistently, we hold that, since Mildred's negative answers could not be incriminating, or "against", Aguilar, he has not been actually harmed by the trial court's failure to submit issue and instructions to the jury.

■ Our view is reinforced when we examine the instance where an admitted spouse is called by the accused spouse, in which event, the spouse's "for" testimony is to be admitted and considered by the jury while the spouse's "against" testimony is to be excluded. In those instances, while the State may cross-examine the witness-spouse fully within the scope of the direct examination, the State may not bring out of the witness-spouse any "new incriminating evidence." *Stephens v. State*, 522 S.W.2d 924 (Tex.Cr.App.1975); *Shirley v. State*, 501 S.W.2d 635 (Tex.Cr.App.1973); and *Newby v. State*, 384 S.W.2d 133 (Tex.Cr.App.1964). In *Stephens* the State cross-examined the witness-spouse within the scope of the direct examination but also asked the witness-spouse if she knew certain named persons and if she was in the courtroom the previous day. *Stephens* holds that, while the additional inquiries violated Art. 38.11, "considering the record as a whole, we conclude that the questions objected to were not so harmful as to require reversal."

Consistently, we hold that, while the common-law marriage issue was raised and should have been submitted to the jury so as to guide their consideration, or not, of Mildred's testimony, the absence of any incriminating content in Mildred's negative testimony renders the error harmless and reversal inappropriate.

■ Finally, Aguilar complains that the judgment admitted for enhancement was void because it recited an offense on a date after the conviction. We do not agree that such recitation makes the judgment void. The record reflects that Aguilar was indicted, tried and convicted for an offense on June 20, 1969, while the judgment recites an offense on June 20, 1970. A similar judgment in *Gray v. State*, 628 S.W.2d 228, 233 (Tex.App.—Corpus Christi 1982, pet. ref'd) was held to be only voidable, correctible by nunc pro tunc entry in the trial court, or by reformation on appeal. *Gray* also held that such a recital error may not be raised or used in a collateral attack as was attempted by Aguilar here.

Affirmed.

STEWART, Justice, dissenting.

I respectfully disagree with the majority's holding that the testimony by Mildred Williams was not "against" Aguilar and therefore whether she is his common-law wife is immaterial. I would sustain Aguilar's third ground of error: that the trial court erred in failing to submit his requested charge on the existence of a common law marriage between himself and Williams.

The majority recognizes the well established rule that a wife shall not, except under limited circumstances, testify against her husband. Tex.Code Crim.Proc.Ann. art. 38.11 (Vernon 1979). The State does not urge any of the exceptions to the rule that are provided by article 38.11; rather, the State responds that appellant and Williams were not married, and consequently, Williams was qualified to testify.

Aguilar asserts that the relationship between himself and Williams constituted a

common law marriage. If Williams was appellant's common law wife, she was disqualified as a witness for the State. *Bush v. State,* 159 Tex.Cr.R. 43, 261 S.W.2d 158, 159–60 (1953). Thus, the first question to be determined is whether a common-law marriage existed. The elements of a common-law marriage are: (1) an agreement by the parties to be married; (2) a living together as husband and wife after the agreement; and (3) a representation to others that they were married. Tex.Fam.Code Ann. § 1.91(a)(2) (Vernon 1975); *Chatman v. State,* 513 S.W.2d 854 (Tex.Cr.App.1974) (and cases cited therein). Moreover, the agreement may be inferred if it is proved that the parties lived together as husband and wife and represented to others that they were married. Tex.Fam.Code, Section 1.91(b).

In this case, both Aguilar and Williams testified they had lived together as husband and wife for some five months and that they had to some extent represented to others that they were married. Their testimony was self-contradictory about whether they had a present agreement to be married or an agreement to be married in the future. In addition, Aguilar produced other witnesses to testify as to the existence of a common-law marriage. The existence of a common-law marriage was clearly raised by the evidence. In such a situation the proper procedure is to submit the question to the jury with appropriate instructions defining common-law marriage and to require the jury to disregard the witness' testimony in the event it determined a marriage existed. *Huffman v. State,* 450 S.W.2d 858 (Tex.Cr.App.1970); *Almaraz v. State,* 377 S.W.2d 197 (Tex.Cr.App.1964); *Krzesinski v. State,* 169 Tex.Cr.R. 178, 333 S.W.2d 149 (1960).

The majority responds by stating that Williams did not testify "against" appellant and, therefore, her status as wife or concubine is immaterial. The record reflects the incident took place in a small room (approximately 10′ × 10′) with only Williams, appellant and the deceased present. On direct examination by the State, Williams testified:

Q: And then did Gilbert, Mr. Aguilar, take a shotgun and shoot Doug with it?
A: I saw him go to the closet, and if he got the gun out I thought maybe he might be just showing Doug the gun or something. It never dawned on me that they had got in an argument or anything.

    \*    \*    \*    \*    \*    \*

Q: Isn't it a fact that Mr. Aguilar wasn't acting mad or showing any emotion?
A: Well, if they were, I didn't notice it.

    \*    \*    \*    \*    \*    \*

Q: Isn't it a fact that you told the police that you don't know why Mr. Aguilar shot Doug?
A: If they had any words, I didn't hear it.
Q: You don't know why—
A: That's right.
Q: —why he shot him, do you?
A: I don't.
Q: You were right there in the apartment; is that correct?
A: Yes, ma'am.

In addition, on direct examination by the State, Williams denied that Aguilar accused her of flirting with deceased and she finally admitted she told the police she saw him load the shotgun. I would hold that Williams' testimony indirectly, if not directly, contradicted appellant's version of the incident contained in his confession. Aguilar did not testify at the trial, and he was urging self-defense. Williams was the only eye witness. Her physical condition and the loud rock music were factors to be considered by the jury in weighing her failure to corroborate appellant's confession, but her lack of corroboration may also have caused the jury to conclude that Aguilar's version of the incident did not happen. In view of the jury's verdict, Williams' testimony cannot be deemed harmless. I would hold that Williams testified "against" Aguilar and, therefore, whether she was his common-law wife was material.

Finally, we have no waiver of error here. Although Aguilar did not object to the charge after his requested instruction was

denied, error may be preserved by either objection to the charge or by a requested instruction. Tex.Code Crim.Proc.Ann. art. 36.15 (Vernon Supp.1982–1983); *Hightower v. State,* 629 S.W.2d 920, 924 (Tex.Cr.App. 1981). Aguilar's third ground of error should be sustained. Accordingly, I would reverse the judgment and remand this case for new trial.